# Exhibit 4

# FLORIDA BAR STAFF OPINION 40837
June 12, 2020

**Note:  This ethics opinion was authored in response to a specific inquiry and may not be applicable to anyone other than the inquiring attorney.**

Florida Bar ethics counsel are authorized by the Board of Governors of The Florida Bar to issue informal advisory ethics opinions to Florida Bar members who inquire regarding their own contemplated conduct.  Advisory opinions necessarily are based on the facts as provided by the inquiring attorney.  Advisory opinions are authored in response to specific inquiries and may not be applicable to anyone other than the inquiring attorneys referenced in them.  Opinions are not rendered regarding past conduct, questions of law, hypothetical questions or the conduct of an attorney other than the inquirer.  Advisory opinions are intended to provide guidance to the inquiring attorney and are not binding; the advisory opinion process is not designed to be a substitute for a judge's decision or the decision of a grievance committee.  The Florida Bar Procedures for Ruling on Questions of Ethics can be found on the bar's website at [www.floridabar.org](www.floridabar.org).

The inquirer asks whether it violates Rule 4-5.6, Rules Regulating The Florida Bar, to sign a confidentiality and non-disparagement agreement as part of the settlement of a client's matter. The section regarding confidentiality states:

> Releasor and Releasor's attorney agree to strict confidentiality regarding the (1) Release, (2) negotiations leading up to this Release, (3) identity of the Parties, and/or (4) facts giving rise to this Release that could identify any Released Party ("Confidential Information"). Should any Party receive an inquiry regarding Confidential Information, said Party shall respond: "No comment other than this matter was resolved." Releasor shall not, unless required by law, disclose any Confidential Information to anyone but Releasor's attorney and tax advisors, provided they first agree to the terms of this section. Releasor shall notify [X company] by email at [email address] at least ten (10) business days prior to disclosure of Confidential Information, for the purpose of enabling the Released Parties to take action to limit or prevent the disclosure of Confidential Information as deemed necessary. By execution of this Release, Releasor directs Releasor's attorney to adhere to the terms of this section which is independent of all other sections of this Release. All other provisions of this Release shall remain in full force and effect, notwithstanding any breach of this sections. Releasor and Releasor's attorney affirm that they have not previously disclosed any Confidential information. Nothing in this Release is intended to or does restrict or limit cooperation with or provision of information to any federal state or local government agency. Any violation of this section shall be a material breach of the Release.

The section regarding non-disparagement states:

> Releasor and Releasor's attorney agree that they will not take any action or make any statements, verbal or written, to any third-party that disparage or defame the

Florida Bar Staff Opinion 40837
June 12, 2020
Page 2

> Released Parties with regard to the Incident and the related Claim. By execution of this Release, Releasor also directs Releasor's attorney to adhere to terms as stated in this Non-Disparagement Provision specifically with regard to the Incident and the related Claim.

During a conversation on the ethics hotline the inquirer was advised that a settlement agreement with confidentiality and anti-disparagement clauses that is entered into by the lawyer would be governed by Rule 4-5.6, Rules Regulating The Florida Bar and the principles discussed in Florida Ethics Opinion 04-2.

Rule 4-5.6, Rules Regulating The Florida Bar, states:

> A lawyer shall not participate in offering or making:
>
> **(a)** a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
>
> **(b)** an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

In Florida Ethics Opinion 04-2, which interprets Rule 4-5.6 (b), the Professional Ethics Committee focused on how a provision negatively affects a lawyer's ability to represent other clients in order to determine whether the provision runs afoul of the rule:

> …Rule 4-5.6(b) prohibits Florida attorneys from proposing or agreeing to a restriction on an attorney's right to practice in connection with a settlement of a matter between private parties.  The prohibition applies to both direct and indirect restrictions.  In determining whether a particular provision violates the rule, the effect of the provision on the attorney's ability to represent other clients must be examined.  This determination should include consideration of whether the provision imposes restrictions on the attorney broader than the attorney's own client would be able to insist upon, whether the provision would limit the attorney's independent professional judgment in the representation of other clients, whether the provision allows an opposing party to indirectly achieve a restriction on the lawyer's right to practice, whether the provision benefits the client or the opposing party and whether the provision furthers or hinders the public policy reasons Rule 4-5.6 was founded upon.  This list of considerations is not intended to be all-inclusive as different circumstances may call for different considerations.  Nor is it intended that the considerations listed above form a rote checklist that must be followed before a provision can be found to be ethically impermissible.  This is because, fundamentally, all of the considerations listed above are different ways of asking the same basic question: what is the effect of

Florida Bar Staff Opinion 40837
June 12, 2020
Page 3

> the provision on a lawyer's ability to represent other clients. *If the provision negatively affects the lawyer's ability to represent other clients, the provision cannot be permissible under Rule 4-5.6*. [emphasis added]

The opinion notes that Florida's rule regarding restrictions on the right to practice is the same as the ABA Model Rule and cites the policy reasons for the rule as set forth in ABA Formal Opinion 93-371:

> ABA Model Rule 5.6(b) is identical to Rule 4-5.6(b). In Formal Opinion 93-371, the ABA Ethics Committee stated the three public policy provisions behind the rule:
>
>> The rationale of Model Rule 5.6 is clear. First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals. Second, the use of such agreements may provide clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off" plaintiff's counsel. *Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients*. [emphasis added]

ABA Formal Opinion 00-417 distinguishes between a ban on the *use* of information learned from a representation and a ban on the *disclosure* of such information. The opinion, which discusses the interplay between the Rule 4-1.6, regarding confidentiality, and Rule 4-5.6, explains that although a ban on disclosure of information does not violate Rule 4-5.6, a ban on use of information is prohibited:

> …it generally is accepted that offering or agreeing to a bar on the lawyer's disclosure of particular information is not a violation of the Rule 5.6(b) proscription. For example, Rule 5.6(b) does not proscribe a lawyer from agreeing not to reveal information about the facts of the particular matter or the terms of its settlement. This information, after all, is information relating to the representation of the attorney's present client, protected initially by Rule 1.6 (Confidentiality of Information) and, after conclusion of the representation, by Rule 1.9(c) (Conflict of Interest: Former Client). With respect to former clients, a lawyer may reveal information relating to the representation only with client consent or in certain limited circumstances not relevant here. A proposed settlement provision, agreed to by the client, that prohibits the lawyer from disclosing information relating to the representation is no more than what is required by the Model Rules absent client consent, and does not necessarily limit the lawyer's future practice in the manner accomplished by a restriction on the use of information relating to the

Florida Bar Staff Opinion 40837
June 12, 2020
Page 4

> opposing party in the matter. Thus, Rule 5.6(b) would not proscribe offering or agreeing to a nondisclosure provision. [footnotes omitted]

Florida Ethics Opinion 04-2 discusses the ABA committee's reasoning:

> The ABA committee reasoned that a ban on the use of information effectively prevents a lawyer from representing future clients because the lawyer's inability to use the information would create a conflict with the future clients under Model Rule 4-1.7 (b) that could not be waived. ABA Formal Opinion 00-417 (2000).

Florida Opinion 04-2 further explains that confidentiality agreements are not prohibited unless they impose a broader restriction on the lawyer than the client would be entitled to impose under Rule 4-1.9. District of Columbia Ethics Opinion 335 (2006) discusses the rationale for the ABA's interpretation regarding the use of information and the interpretations of other jurisdictions regarding similar rules:

> This same rule, or a similar version, also has been interpreted to prohibit an agreement not to use information learned in the course of the case in a future representation against the same party. *Enforcement of such an agreement might effectively prevent the lawyer from representing future clients since the only way for the lawyer to ensure that he does not use information that he has learned is to decline to represent anyone else in a similar case*. Other jurisdictions also have prohibited similar clauses in settlement agreements restricting "plaintiff or plaintiff's counsel from using case information to assist other litigants or claimants;" requiring plaintiff's counsel to turn over her entire file, including her work product, to defense counsel to be sealed; "barring a lawyer representing a settling claimant from subpoenaing certain records or fact witnesses in future actions against the defending party;" or forbidding disclosure of "the business or operations of the defendant corporation" *An underlying rationale for all these opinions is that the prohibited provisions restrict the lawyer's right to practice by effectively preventing him or his firm from representing clients in certain kinds of cases against the settling party*.
>
> Underlying each of the opinions disapproving restrictions on the future conduct of lawyers, under the rule equivalent to D.C. Rule 5.6, is the intent to preserve the public's access to lawyers who, because of their background and experience, might be the best available talent to represent future litigants in similar cases, perhaps against the same opponent. [emphasis added & endnotes omitted]

Although there is no Florida ethics opinion dealing specifically with non-disparagement clauses, Florida Ethics Opinion 04-2 concerning confidentiality clauses, discussed above, also provides guidance regrading this type of clause. Whether a settlement clause violates the rule depends on

Florida Bar Staff Opinion 40837
June 12, 2020
Page 5

how the provision affects an attorney's ability to represent other clients in matters involving the same or related adverse party.

Out-of-state ethics opinions that specifically address non-disparagement clauses state that the agreement is unethical if the clause limits a lawyer's ability to represent other clients. Connecticut Opinion 2013-10, Indiana Opinion No. 1 of 2014, and Pennsylvania Opinion 2016-300.  (The restrictions on lawyer advertising discussed in these opinions have not been considered by the Professional Ethics Committee and will not be addressed in this opinion.) Therefore, a clause is impermissible if the provision can be interpreted as a restriction on the right to practice.  For example, the Indiana opinion states:

> If the clause is interpreted to ban either the filing of a new action against the defendant or statements made in the course of such an action, on the ground that a complaint or other statements is "disparaging," then the agreement would clearly violate Rule 4-5.6(b).

The clauses in the settlement agreement also raise concerns under Rule 4-3.4, Rules Regulating The Florida Bar. The rule states:

> A lawyer must not:
>
> (f)  request a person other than a client to refrain from voluntarily giving relevant information to another party unless the person is a relative or an employee or other agent of a client, and it is reasonable to believe that the person's interests will not be adversely affected by refraining from giving such information;

Out-of-state ethics opinions have found that some non-disparagement and confidentiality clauses violate this rule.  Indiana Ethics Opinion 1-2014 states that a non-disparagement clause that prevents an attorney from voluntarily giving evidence to a party to litigation or a person otherwise seeking to investigate or assert a claim or defense violates 3.4(f) in the absence of a protective order or other valid confidentiality obligation that covers the evidence.  Chicago Bar Association Informal Ethics Opinion 2012-10 also discusses a settlement agreement that prohibits the disclosure of information by a plaintiff in light of this rule. The committee found that it is unethical to offer or accept this type of agreement.   The opinion states:

> Here, the defendant has proposed a settlement provision that would prohibit the plaintiff from, among other things, disclosing the "existence, substance and content of the claims" and "all information produced or located in the discovery processes in the Action" unless "disclosure is ordered by a court of competent jurisdiction, and only if the other party has been given prior notice of the disclosure request and an opportunity to appear and defend against disclosure . . ."

Florida Bar Staff Opinion 40837
June 12, 2020
Page 6

> That proposed settlement provision therefore precludes the plaintiff from voluntarily disclosing relevant information to other parties. As a result, it violates Rule 3.4(f) and a lawyer cannot propose or accept it.

The committee determined that:

> "another party" in Rule 3.4(f) means more than just the named parties to the present litigation. *Rather, it should be interpreted more broadly to include any person or entity with a current or potential claim against one of the parties to the settlement agreement.* A more narrow interpretation would undermine the purpose of the rule and the proper functioning of the justice system by allowing a party to a settlement agreement to conceal important information and thus obstruct meritorious lawsuits. [Emphasis added.]

Additionally, the Supreme Court of Kentucky has interpreted Rule 3.4 to prevent lawyers from including a clause in a settlement agreement that prohibits a former client from cooperating with an investigation by the state bar. *Kentucky Bar Association v. Unnamed Attorney*, 414 S.W.3d 412 (Ky. 2013). The instant release states that "[n]othing in this Release is intended to or does restrict or limit cooperation with or provision of information to any federal state or local government agency. Any violation of this section shall be a material breach of the Release." The release would violate Rule 4-3.4, Rules Regulating The Florida Bar if the release is interpreted to prohibit cooperation with The Florida Bar, for example, which is not a government agency.

In conclusion, whether the settlement agreement provisions are unethical depends on the interpretation. The provisions are impermissible if the language is interpreted to negatively affect the inquirer's ability to represent other clients in similar cases. Additionally, the inquirer cannot enter into a settlement agreement that prohibits a party from voluntarily providing information in violation of Rule 4-3.4.